**Meng LI, Petitioner–Appellant,**

v.

**Robert C. EDDY, District Director, INS, Respondent–Appellee.**

**No. 97–35814.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Aug. 8, 2001

Margaret D. Stock, Jeffrey Scott Moeller, Stock & Moeller, LLC, Anchorage, Alaska, for the petitioner-appellant.

Hugh G. Mullane, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent-appellee.

Before: SCHROEDER, BEEZER and HAWKINS, Circuit Judges.

PER CURIAM Opinion; Dissent by Judge HAWKINS

PER CURIAM:

Appellant Meng Li is a native and citizen of China who seeks judicial review of the merits of the Immigration and Naturalization Service's order of expedited removal under the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. 104–208, 110 Stat. 3009, as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656. The district court dismissed Li's petition for habeas corpus relief, holding that under the statute's stringent limitations on judicial review of expedited removal orders, it lacked authority to review the merits of her claim. *See* 8 U.S.C. §§ 1252(e)(2); (e)(5). We affirm.

On June 6, 1997, Li was detained by the Immigration and Naturalization Service (INS) in Anchorage, an interim stop on her trip from China to New York. Although Li alleges that she presented a facially valid visa that she had used successfully on an earlier occasion, the INS determined Li was attempting to enter the country by engaging in fraud or misrepresentation, and used its expedited removal authority under 8 U.S.C. § 1225(B)(1)(A)(i) to exclude Li from the country.[1] The order itself was issued on a form stating that the INS had determined the named alien to be excludable because of an attempt to enter the country through fraud or misrepresentation. The form included a space for a description of the nature of the fraud or misrepresentation, but the INS left that space blank in Li's order.

Li filed this habeas corpus petition on June 12, 1997, contending her visa entitled her to entry into the United States and that her exclusion was therefore unlawful. She sought an order admitting her into this country and voiding the five-year bar to her reentry that was contained in the removal order.

Li's removal occurred after the effective date of IIRIRA, a statute that empowers the INS to expedite the removal of certain aliens deemed inadmissible. 8 U.S.C. § 1225(b)(1)(A)(i).

IIRIRA restricts judicial review of expedited removal orders. These restrictions are incorporated in 8 U.S.C. § 1252(e). Two are relevant to this case. The first, subsection (e)(2), sets general limits on

---

1. 8 U.S.C. § 1225 provides in relevant part that:

if an immigration officer determines that an alien ... is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1182(a)(6)(C)(i) provides that "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure ... a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(7) states that any immigrant not in possession of valid travel documents "is inadmissible."

habeas proceedings involving aliens facing expedited removal from the United States, and the second, subsection (e)(5), precisely defines the scope of a court's inquiry.

Under subsection (e)(2), a court hearing a habeas corpus petition is limited to determining whether the petitioner was an alien, whether the petitioner was removed under the appropriate section, and whether the petitioner can prove that the petitioner is a lawful resident or is requesting asylum as a refugee.[2]

Li does not contend that she is a lawful resident, a refugee or an asylum seeker. Nor does she dispute her alienage, or question the fact that the government invoked section 1225(b)(1) to order her removal. She questions only whether she committed any fraud that made the section applicable.

■ On its face, subsection (e)(2) does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but only whether it was invoked at all. Were there any doubt of congressional intent, it is resolved by subsection (5), that expressly declares that judicial review does not extend to actual admissibility. It provides:

> In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actual-

ly inadmissible or entitled to any relief from removal.

8 U.S.C. § 1252(e)(5).

Although we have not had occasion to review these particular provisions of this relatively recent statute, we have discussed the overall architecture of IIRIRA in the context of the transitional rules to be applied prior to the effective date of the statute. *See Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999). These rules are materially indistinguishable from the statute itself. *See Flores–Miramontes v. INS*, 212 F.3d 1133, 1136–37 (9th Cir.2000).

In *Magana–Pizano* we held that more general habeas review of INS decisions remains available under 28 U.S.C. § 2241 unless Congress has explicitly restricted such review. There we said:

> IIRIRA § 242(g) limits judicial review, but does not refer to habeas jurisdiction under 28 U.S.C. § 2241. Presumably, the holding in *Felker* placed Congress on notice that it could repeal habeas jurisdiction under § 2241 only by express command, and not by implication.

*Magana–Pizano*, 200 F.3d at 609, *citing Pak v. Reno*, 196 F.3d 666, 673–74 (6th Cir.1999), *citing Felker v. Turpin*, 518 U.S. 651, 660, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

There is no specific limitation on the availability or scope of habeas corpus review of ordinary removal orders like the one in *Magana–Pizano*. With respect to review of expedited removal orders, how-

---

**2.** 8 U.S.C. § 1252(e)(2) provides the following:

> (2) Habeas corpus proceedings
> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of-
> (A) whether the petitioner is an alien,
> (B) whether the petitioner was ordered removed under such section, and

> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

ever, the statute could not be much clearer in its intent to restrict habeas review. *See* 8 U.S.C. § 1252(e)(2) (section entitled "Habeas corpus proceedings" provides "judicial review ... shall be limited...."). Accordingly, only two issues were properly before the district court: whether the order removing the petitioner was in fact issued, and whether the order named Li. Because these issues were not contested in the case, the district court properly dismissed the petition for failure to raise any issue within its jurisdiction to review.

Since it appears that the INS did not mistakenly identify petitioner, we do not reach the issue of whether the restrictions on review of habeas corpus contained in 8 U.S.C. § 1252(e) would prevent the court from considering a petition from someone allegedly targeted for expedited removal on the basis of mistaken identity. The government agrees there is no "in custody" requirement for the limited review provisions of section 1252(e). Nor do we need to decide whether Li satisfies the in custody requirement for habeas corpus relief under 8 U.S.C. § 2241, even though she is no longer in the country or at the border. Because of the limitation of § 1252(e)(2), the district court would have no jurisdiction to decide a section 2241 habeas corpus petition filed by Li.

The dissent maintains that, under our holding in *Magana–Pizano*, we are still free to review whether the petitioner actually committed any fraud that would render her inadmissible under section 1225(b), despite the clear, explicit language of section 1252(e)(5) barring review of "whether the alien is actually inadmissible or entitled to any relief from removal." In light of that restriction, we cannot agree with our respected colleague.

In *Magana–Pizano* we considered a statutory bar to appeals by aliens who were deportable because of a criminal conviction, and we suggested that a petitioner could challenge whether she was a member of the category of aliens for which no review was permitted. *See Magana–Pizano*, 200 F.3d at 607. Our decision in that case was grounded in the relevant statutory language. Where an alien not at the border is subject to deportation "by reason of having committed" a certain type of criminal offense, the court may inquire whether the petitioner in fact committed such an offense and is subject to the statute's provisions. The statutory language we discussed in *Magana–Pizano* did not preclude us from considering whether the petitioner committed an offense that triggers the limitations on review of the deportation order. Here, the statutory language giving petitioners such as Li a limited grant of habeas corpus jurisdiction expressly precludes us from reviewing whether the petitioner is entitled to admission.

We emphasize that this case does not implicate the jurisdictional issues that would be raised had Li been lawfully admitted to this country. *Cf. INS v. St. Cyr*, ––– U.S. –––, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). We leave for another day the question of our jurisdiction to determine whether an individual in such a situation is lawfully "ordered removed under such section." Section 1225(b) authorizes the INS to issue expedited removal orders for certain individuals who appear to be seeking entry to the U.S. by fraud or misrepresentation. *See* 8 U.S.C. § 1225(b) (authorizing expedited removal of aliens at the border where an immigration officer determines the alien obtained a visa through fraud and the alien does not intend to request asylum or express fear of prosecution); 8 U.S.C. § 1182(a)(6)(C)(i) (denying entry to an alien at the border who procures visa through material misrepresentation). If the INS were to use these provisions or to remove individuals not seeking admission

at the border, then its actions would bear no relationship to the statutory authority in section 1225(b).

Such facts are not present here. This case involves a petitioner at the border who was not lawfully admitted. Hers is clearly the type of case for which the expedited removal provisions of 8 U.S.C. § 1225(b) and the limited review provisions of section 1252(e)(2) were designed. *See* H.R. Conf. Rep. No. 104–518 (1995), U.S.Code Cong. and Adm. News, at 924 (discussing applicability of expedited removal procedure to "individuals who arrive in the United States").

■ The petitioner also contends that her removal violated a constitutional right to due process. Li, however, has no constitutional due process right to challenge her immigration status or to petition for entry into the United States because she is a non-resident alien seeking entry at the border into the United States. *See U.S. ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (admission to the U.S. is a "privilege granted to an alien only upon such terms as the U.S. shall prescribe"). The Supreme Court has held that the discretion of Congress to determine which and on what basis aliens may enter this country is paramount. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) ("over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens"); *Alvarez–Mendez v. Stock,* 941 F.2d 956, 961 n. 4 (9th Cir.1991).

To the extent that Li's constitutional challenge targets the systemic expedited removal procedures Congress adopted in the statute, it is not within the jurisdiction of the courts in this circuit. Congress has declared that such systemic challenges are to be filed in the District of Columbia, and within 60 days of promulgation of the expedited removal procedures. Judicial review there is limited only to whether the Attorney General's regulations implementing the expedited removal authority are constitutional. *See* 8 U.S.C. § 1252(e)(3); *American Immigration Lawyers Ass'n v. Reno,* 199 F.3d 1352, 1357 (D.C.Cir.2000) (reviewing the Attorney General's regulations governing expedited removal in light of the jurisdictional restrictions in subsection (e)(3), and finding regulations lawful).

AFFIRMED.

HAWKINS, Circuit Judge, dissenting:

I respectfully dissent. This case presents an important question under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"): may the holder of a valid visa to enter the United States seek habeas corpus review when unlawfully issued an expedited removal order by INS? IIRIRA most certainly changed the landscape of habeas review, but did Congress intend to foreclose habeas review entirely? I suggest they did not for two reasons: (1) under IIRIRA and the reasoning of similar precedent, we have jurisdiction to determine, at least superficially, whether the alien actually engaged in conduct triggering an expedited removal order, and (2) limiting habeas review to the form, but not the underlying statutory predicate, of an expedited removal order renders the statutory predicates of expedited removal orders mere surplusage.

## FACTS AND PROCEDURAL HISTORY

The facts are important to an understanding of both the majority opinion and this dissent. On June 6, 1997, Meng Li, a Chinese businesswoman, arrived in Anchorage, Alaska, en route to New York City to negotiate contracts for the purchase of appliances and fixtures for a real estate development project in China. This

was her third business trip to the United States; she had previously entered once using the same B–1 (business visitor) visa she then held and once under an earlier B–1 visa.

INS agents at the Anchorage International Airport refused to allow Li to continue on her scheduled flight to New York. Without explanation, Li was detained by INS and incarcerated in a local jail. Li promptly retained an attorney and sought habeas relief in district court.

For eleven days, Li had no idea why she had been detained and incarcerated. At her initial habeas corpus hearing Li was served with Form I–860, which purported to place her in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). The form accused Li of violating immigration laws by procuring a visa through fraud or willful misrepresentation. The form also contained a space in which INS was to explain the specific unlawful conduct. This space was left blank.

INS provided no explanation on the form because it could not then and has not yet explained how Li procured her visa through fraud or willful misrepresentation. What appears to have happened is this: [1] Prior to her trip to New York, Li applied for a L–1 (intracompany transfer) visa and was denied. This denial in no way impacted the validity of Li's existing B–1 visa, but apparently local INS agents incorrectly thought that the denial invalidated the B–1 visa.[2] Thus, these local INS agents incorrectly believed that Li was attempting to enter under an invalid visa; she had been lawfully admitted and the source of the expedited removal order was INS mistake, not any misconduct by Li. The majority's assertion that "[t]his case involves a petitioner at the border who was not lawfully admitted" is simply not true.

After being presented with Form I–860, Li asked the district court to examine the expedited removal order to determine whether INS was exceeding the bounds of its statutory authority in purporting to issue her such an order. The district court ruled that IIRIRA left it without jurisdiction to consider the legal basis for the expedited removal order, dismissed Li's complaint challenging the expedited removal order, and denied her petition for writ of habeas corpus. Li was thereafter removed under an expedited removal order and is now statutorily barred from reentering the United States for at least five years. 8 U.S.C. § 1182(a)(9)(A)(i).

## ANALYSIS

An expedited removal order shall be issued "if an immigration officer determines that an alien . . . is inadmissible under [8 U.S.C.] section 1182(a)(6)(C) or [8 U.S.C. § ] 1182(a)(7)." 8 U.S.C. § 1225(b)(1)(A)(i). 8 U.S.C § 1182(a)(6)(C)(i) provides that, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States or other benefit under this chapter is inadmissible." Likewise, under 8 U.S.C. § 1182(a)(7), any alien not in possession of valid travel documents is inadmissible.

8 U.S.C. § 1252(e)(2) provides limited habeas corpus review of expedited removal orders. After IIRIRA, habeas review is limited to: (1) whether the petitioner is indeed an alien, § 1252(e)(2)(A); (2) "whether the petitioner was ordered re-

---

**1.** While the INS has never officially explained its "grounds" for removing Li, an INS agent did discuss the underlying events at Li's habeas corpus hearing and this description of events comes from that.

**2.** Indeed, unknown to either Li or local INS, Li's re-application for a L–1 visa had been *approved* just before her arrival in Alaska.

moved under [§ 1225]," § 1252(e)(2)(B); and (3) whether the petitioner can prove by a preponderance of the evidence that she is an alien lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum, § 1252(e)(2)(C). Li is an alien, was not lawfully admitted for permanent residence, and does not contend that she qualified for refugee or asylum status, so her habeas action can proceed only on the basis of "whether [she] was ordered removed under [§ 1225]."

Section 1252(e)(5) clarifies § 1252(e)(2)(B), explaining:

In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal.

The majority argues that § 1252(e)(2)(B) "does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but only whether it was invoked at all." If true, this means that INS can issue an expedited removal order for *any* alien seeking to enter the United States (other than a permanent resident, refugee, or asylum-seeker) for *any* reason, including clearly improper grounds such as racial or ethnic bias, and the courts cannot review the legal basis of that order. A careful reading of § 1252(e)(2)(B), grounded in the overall expedited removal provisions of IIRIRA, coupled with our precedent interpreting similar review provisions, compels the opposite result.

## A. *Magana–Pizano* and Statutory Predicates for Removal

In interpreting IIRIRA, we have held that we "have jurisdiction to determine whether jurisdiction exists." *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir. 2000). In *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999), we considered the scope of judicial review under the jurisdictional bar relating to criminal removal orders.[3] The limited judicial review mechanism for criminal removal orders found at 8 U.S.C. § 1252(a)(2)(c) is very similar to the limited habeas review mechanism for expedited removal orders created by § 1252(e)(2). *Magana–Pizano* was decided under IIRIRA's transitional provisions, but the review language remains essentially the same after re-codification:

Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C.] section 1182(a)(2) or [8 U.S.C. § ] 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by [8 U.S.C.] section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of commission, otherwise covered by [8 U.S.C.] section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C). Even though the statute in *Magana–Pizano* clearly stated that courts have no jurisdiction to review "any final order of removal," we held that we have jurisdiction to determine whether a petitioner "is an alien [removable] by reason of having been convicted of one of the enumerated offenses." *Id.* at 607; *see also Flores–Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir.2000).

---

**3.** I refer to part II of *Magana–Pizano*, 200 F.3d at 607, not part III which deals with general habeas corpus jurisdiction under 28 U.S.C. § 2241, 200 F.3d at 607–09.

Section 1252(e)(2)'s limitations on habeas review of expedited removal orders are very similar to these limits on review of criminal removal orders, as are the corresponding statutory predicates. An alien who has not committed one of the statutorily enumerated criminal offenses cannot be removed under a criminal removal order; similarly, an alien who has not committed one of the statutorily enumerated immigration offenses cannot be removed under an expedited removal order. Surely if we have jurisdiction to determine whether an alien committed a criminal offense triggering criminal removal, we also have jurisdiction to determine whether an alien committed an immigration offense triggering expedited removal.

The majority contends that habeas review of expedited removal orders should be treated differently than the habeas review of criminal removal orders because *Magana–Pizano* made clear that Congress can repeal habeas jurisdiction under 8 U.S.C. § 2241 by express command. *Id.* at 609. But what is at issue here is not the availability of general habeas review under § 2241, but rather the scope of the limited habeas review provided for at § 1252(e).

The majority also holds that the presence of the sentence, "There shall be no review of whether the alien is inadmissible or entitled to any relief from removal," in § 1252(e)(5) distinguishes this case from *Magana–Pizano* because § 1252(a)(2)(C) does not contain such language. I do not find this distinction controlling because § 1252(a)(2)(C) does contain the phrase, "[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense. . . ."

*Magana–Pizano* is clear that we have jurisdiction to determine removability under § 1252(a)(2)(C). Yet, § 1252(a)(2)(C) says "no court shall have jurisdiction to

review any final order." Perhaps the phrase that allows review is "who is removable." Section 1252(e)(5) contains a very similar phrase: "whether such an order in fact was issued." Just as § 1252(a)(2)(C) allows review of removability, § 1252(e)(5) allows review of "whether such an order in fact was issued." The majority contends that this phrase limits review to determining whether INS is facially invoking § 1225. But that interpretation leaves some of the language inoperative. The majority's interpretation would make more sense if the statute read "whether an order was issued." But here we have three crucial additional words, "such" and "in fact." The use of the term "such" implies that we are to determine whether the order is indeed an expedited removal order and the presence of "in fact," to my mind, speaks to at least superficial substantive review.

Of course, the limit on review of actual inadmissibility is likewise not inoperative, but the whole of § 1252(e)(5) can be read together so that each phrase serves a purpose by holding that courts have jurisdiction to determine at least superficial compliance with § 1225 when INS purports to issue expedited removal orders. This case does not require us to decide how far-reaching the substantive review should be because here even the most superficial, limited form of review demonstrates INS's error—INS has identified *no reason* for Li's inadmissibility under § 1225.

Congress can expressly remove habeas review, but that is not what it did in § 1252(e)(2). Rather, Congress limited our review, *supra*. In such a situation, we retain jurisdiction to determine whether we have jurisdiction, just as in part II of *Magana–Pizano*. The only way that we can determine whether Li was "ordered removed under [§ 1225]," § 1252(e)(2)(B), and "whether such an order in fact was

issued," § 1252(e)(5), is to determine whether INS has, to whatever extent, identified any conduct that offends § 1225. Thus, the reasoning of part II of *Magana–Pizano* should control this case—the legal satisfaction of statutory predicates has to be determined to establish jurisdiction.

### B. Giving Meaning to the Whole Statute

Does § 1252(e)(5) erect an absolute bar to habeas review of the substance of an expedited removal order? While the statute is clear that "judicial review does not extend to actual admissibility," stopping there neglects a further question: how do we reconcile the statutory predicates for expedited removals found at § 1225(b)(1)(A)(i) with the judicial review provisions of §§ 1252(e)(2)(B) and 1252(e)(5)?

Separate provisions of a single statute, such as IIRIRA, should be interpreted harmoniously, in a manner that renders none of the provisions surplusage. *Neal v. Bd. of Trs. of Cal. State Univs.*, 198 F.3d 763, 771 (9th Cir.1999). The majority's view of § 1252(e)(2)(B) would render the specific requirements for expedited removal found at § 1225(b)(1)(A)(i) surplusage. Under that provision, an expedited removal order is only to be issued where the alien is inadmissible under § 1182(a)(6)(C) (fraud or willful misrepresentation to gain admission) or § 1182(a)(7) (no valid visa). If INS is allowed to remove aliens for any reason whatsoever (or no reason, as in Li's case), then these statutory predicates for an expedited removal have no legal teeth and are mere surplusage. Indeed, INS realizes that § 1225(b)(1)(A)(i) presents clear prerequisites for proper issuance of an expedited removal order—that is why Form I–860 contains a blank space in which the agent is supposed to explain the particular fraud or willful misrepresentation that triggers inadmissibility under § 1182(a)(6)(C). Judicial foreclosure of

any sort of review of the substance of an expedited removal order, rendering the statutory substantive requirements mere surplusage, is unwarranted where, as here, the statute permits another reading.

### CONCLUSION

In considering removal orders with statutory predicates, we have jurisdiction to determine whether the alien actually engaged in conduct triggering the statutory predicate. IIRIRA's review provisions do not require that we limit our review in such a manner as to render meaningless the statutory predicates to expedited removal. The majority contends that it is not deciding whether jurisdiction extends to review "a situation that otherwise has no colorable connection to the provisions of and purpose underlying section 1225(b)." This case presents exactly that scenario. The district court's decision should be reversed and this case should be remanded so that Li's habeas corpus petition can be considered on the merits.